## Louisville & Nashville R. R. v. Peck

(Decided February 4, 1913.)

Appeal from Green Circuit Court.

1. Pleading—Plea or Answer—Traverse.—Where new matter set up in reply is but a repetition of the complaint set forth in the original cause of action, which was controverted in the answer, no further traverse is necessary.

2. Negligence—Proximate Cause of Injury—Act of God.—Non-liability for the results of an agency, causing an injurious accident, is premised, not upon the fact that such agency, or its manifestation, is unprecedented or unusual, but upon the fact that its consequences could not have been anticipated and guarded against by the exercise of reasonable care.

3. Master and Servant—Master's Liability for Injuries to Servant—Nature and Extent.—It is the duty of a railroad company to exercise that degree of prudence to foresee, and use such reasonable means to prevent, injury to its roadbed and tracks from excessive rainfall, as an ordinarily prudent person would exercise and use under similar circumstances. The foresight and means of prevention of injury are not such as would be suggested after the happening of the accident, but only such as would be suggested to the mind of a very cautious man, who is without reasonable knowledge that the accident is likely to occur.

4. Appeal—Review—Verdict—Sufficiency of Evidence in Support of.—While the evidence to support the verdict is unsatisfactory, it is some evidence, and sufficient to support the finding of the jury.

5. Trial—Taking Case from Jury—Direction of Verdict.—Where defects in defendant's evidence supply defects in evidence of plaintiff, such evidence must be considered on motion for peremptory instruction.

W. C. McCHORD, BENJAMIN D. WARFIELD and CHAS. H. MOORMAN, for appellant.

NOGGLE & GRAHAM and JEFF HENRY, for appellee.

OPINION OF THE COURT BY JUDGE LASSING.—Affirming.

C. W. Peck instituted suit against the Louisville & Nashville Railroad Company, in which he sought to recover damages for injuries sustained by the overturning of one of said company's railroad trains on the boundary line between Taylor and Green counties, at a point half way between Wright's Station and Whitewood, on the night of July 18, 1911. At the time of the accident, plaintiff was in the employ of the defendant company in the capacity of flagman or rear brakeman. The specific negligence complained of in the petition, is, "that the roadbed and track of the defendant at the place where said wreck occurred was insufficient and defective, insecure and unsafe for the purpose of running and operating said train over the same," that said condition of said roadbed and track was not known to plaintiff, but was, or could, by the exercise of proper care, have been known to defendant, its agents and servants; "that the defendant by the gross negligence and carelessness of its servants, agents and employes superior in authority to

plaintiff, ran and operated said train on and over said insufficient, defective, insecure and unsafe track of the defendant at the place of said wreck, at a time when said track and roadbed was covered with water.'' These specific allegations of negligence were traversed in an answer, in the second paragraph of which, the defendant pleaded that the accident was due to an unprecedented rainfall, or cloudburst, just in front of the train, by which the tracks were removed from the roadbed to such an extent that it caused the derailment of the train; that the injury complained of was caused by an act of God, which could not have been anticipated and avoided; and that no such rainfall had ever occurred in that vicinity before or since. The affirmative matter of the answer was traversed in a reply, and in addition thereto, it was alleged, ''after the rainfall mentioned in the answer, the defendant by its agents and servants failed and neglected to take any precaution to ascertain if said rainfall had caused any damage to the defendant's track, and the defendant by its agents and servants by its gross negligence and carelessness failed and neglected to take any precaution to prevent said wreck.'' These affirmative allegations of the reply were not traversed, demurred to, or moved to be stricken out, because, as alleged by counsel for plaintiff, of certain facts not disclosed by the record. Upon a trial before a jury, plaintiff recovered a verdict for $500.00, and from the judgment entered thereon this appeal is prosecuted.

It is insisted for appellee at the outset, that the failure of the appellant company to controvert the affirmative allegations of the reply warranted the recovery, in the absence of any proof; that it amounted to a confession, on the part of the company, of the negligence charged. We do not so view the pleading. The answer had completely denied every allegation of the negligence set up in the petition, and this new matter, contained in the reply, was, in fact, but a repetition of the complaint set up in the original cause of action. There was no necessity for denying these allegations. The issue was joined, and tried out as joined.

Counsel for appellant do not, in brief, complain of the instructions, or of the admission or rejection of testimony. They rest their right to a reversal upon a single ground, viz: The failure of the court to sustain the motion of appellant for a peremptory instruction made

at the close of appellee's testimony, and renewed at the close of all the testimony. The issues are, first, that the roadbed and track, at the point of derailment, were defective and insufficient for the purpose of safe operation of trains thereover; second, that the servants of appellant, in charge of said train, saw, or by the exercise of ordinary care, could have seen the dangerous condition of the track, in time to have stopped the train and avoided the injury; and third, that tendered by the answer, that, although the rainfall was unusual or unprecedented, the washout of the roadbed and tracks, which resulted therefrom, could have been foreseen and prevented by appellant, had it exercised ordinary care to do so.

The record discloses that, in the vicinity of the wreck, there is a vast water shed emptying into Meadow creek, which, for three or four miles at least, flows parallel and adjacent to appellant's right of way, and into Green River about two miles below where the wreck occurred. Across Meadow creek from the point of the wreck, and emptying into it, is a deep ravine, draining some five or six hundred acres. On that side of the railroad track, the distance from the roadbed to the bluff or hill, is about fifty feet, and the land between the creek and the bluff is level; on the opposite side of the tracks the distance from the roadbed to the bluff is about one hundred and fifty feet. The embankment, or elevation of the roadbed, along the creek is some eight or ten feet high. The creek is narrow and usually contains only a small amount of water. Three culverts, one ten by ten, and two six by ten, about one hundred yards apart, provide an outlet for the overflow in Meadow creek. The exact location of these culverts is not shown, except that the nearest to the washout is a quarter of a mile off. The derailment took place about 10 o'clock P. M. It was then, and had been, raining since the train left Lyons Station, about 43 miles south of Louisville. Witnesses for appellee testify that the rain was a hard one, but not unusual; while those for appellant testify that no such rainfall had ever occurred in that vicinity. The water in Meadow Creek rose, in volume and intensity, sufficiently to remove the railroad tracks, intact, from the crown of the roadbed over on the embankment for a distance of seventy or seventy-five yards along the right of way. The train ran upon the tracks

thus removed and was overturned, and caused the injury of which appellee complains.

The third point in issue will be first considered. It is apparent that counsel for appellant conceived that, if this rainfall was unprecedented, the company would be immune from liability for injury resulting from the washout which it caused and, therefore, directed his proof to the character of the rainfall and failed to enlighten the jury by evidence as to whether the consequences of the rainfall could have been foreseen and provided against by reasonable diligence. Non-liability, for the results of an agency, causing an injurious accident, is premised, not upon the fact that such agency, or its manifestation, is unprecedented or unusual, but upon the fact that its consequences could not have been anticipated and guarded against by the exercise of reasonable care. The time, volume, or intensity of the rainfall was not within the control of appellant. But, it knew of the existence of this vast watershed near where this wreck occurred; it knew that on occasions of excessive rainfalls, water would collect in this narrow creek adjacent to its right of way; it knew that injury to its roadbed and tracks would be probable, if not inevitable, unless the outlets for this water, whether natural or artificial, were sufficient to carry it off. It was incumbent upon it to exercise that degree of prudence to foresee, and use such reasonable means to prevent, injury to its roadbed and tracks from the water, as an ordinarily prudent person would exercise and use under similar circumstances. This foresight and means of prevention of injury are not such as would be suggested after the happening of the accident, but only such as would be suggested to the mind of a very cautious man, who is without reasonable knowledge that the accident is likely to occur.

To support the contention that appellant should have foreseen the consequences of this rainfall, appellee introduced a map and testimony showing the topography of the region near where the wreck occurred. This evidence fails to support such contention, for the reason that all of his testimony had been to the effect that this was nothing more than an ordinary rainfall, and the inference that the creek was sufficient to carry off the water in ordinary rains is just as strong as the inference that it was insufficient for that purpose. But, on cross-

examination appellee was asked if he had ever known of the water being over the track where the wreck occurred. He answered that such condition existed four or five years before the trial. Knowledge of an actual occurrence, at a comparatively recent date, would have been of material assistance to appellant in the exercise of care to anticipate injury to its tracks from water in this creek, and this is some evidence tending to show a failure to exercise it. The reasonable possibility of providing against the consequences of this rainfall was not developed in the proof offered by appellee, but the testimony of the witnesses for appellant tended to show this, and must be considered on this motion. Matlack v. Sea, 144 Ky., 749. E. Shivel, the section foreman in charge of the track where this accident happened, gives the following version of the cause of the accident: "The water come down this here hollow and this here Meadow creek, you call it, was up, overflowing, and this body of water come down here and went across this water and caught this track here and knocked it over. That is what done the devilment." Dr. B. M. Taylor says that, in his opinion, the space was too narrow to take care of the two currents of water coming from the ravine and the creek, the trees along the right of way resisting them. J. W. Marshall was likewise of the opinion that the wreck was due to the fact that the creek was too narrow to take care of the water of the two streams. It is apparent, therefore, that the washout was due to the failure of the company to provide a sufficient outlet for this water. The section foreman testifies that the three culverts were sufficient to carry off the water in ordinary times. The culvert nearest to the confluence of these two streams was a quarter of a mile off. The company offered no evidence whatever to show whether or not additional culverts, or one of greater capacity, were practicable, or whether their location at places different from where they were would or not be sufficient to take care of this excessive rainfall. The evidence offered upon this point, while not satisfactory, is some evidence tending to show a failure on the part of the company, to use such means as would have been reasonably necessary and sufficient to provide an outlet for this water, which accumulated in this narrow creek and resulted in injury to its tracks. The trial court

properly ruled that there was evidence sufficient for the case to go to the jury.

Having decided adversely to the contention of appellant upon one of the grounds of negligence, it is unnecessary to notice the evidence, if any, in support of the other two grounds of negligence.

Judgment affirmed.